**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF MISSISSIPPI**

IN RE:  DOREEN M. EARLY                                CASE NO. 10-51400-KMS

DEBTOR                                                            CHAPTER 7


LLOYD J. HOFFMEISTER, JR. AND
JUDY D. HOFFMEISTER
                                                                      PLAINTIFFS

V.                                                    ADV. PROC. NO. 10-05071-KMS

DOREEN M. EARLY, Individually and
SHELTON BUILDERS, INC.                                    DEFENDANTS

**MEMORANDUM OPINION AND ORDER ON COMPLAINT
OBJECTING TO DISCHARGE AND DISCHARGEABILITY OF DEBT**

        This matter came before the Court on the Complaint Objecting to Discharge and

Dischargeability of Debt (Adv. Dkt. No. 1) filed by Lloyd J. Hoffmeister, Jr. and Judy D.

Hoffmeister against Doreen M. Early, the Debtor in the above-styled Chapter 7 case, and Shelton

Builders, Inc.; and Doreen M. Early's Answer to Plaintiffs' Complaint [sic] to Discharge and

Dischargeability of Debt (Adv. Dkt. No. 8) filed by the Debtor.  The complaint was filed in

connection with a contract between the Hoffmeisters and Shelton Builders, Inc. for the

construction of a home.  Trial on the matter was commenced on May 20, 2013, and continued to

and concluded on May 28, 2013.  At the hearing, Doreen M. Early represented herself without

the assistance of counsel.   William L. Ducker and Allen Flowers represented Judy D.

Hoffmeister.[1]  The record remained open until June 28, 2013, to allow the plaintiff time to

investigate a transfer of property by the Debtor and to request further hearing.  No further

hearing request was made and the evidentiary record was closed.  The matter was submitted to

---

[1] On or about August 20, 2012, subsequent to the filing of the complaint but prior to trial on the matter, plaintiff
Lloyd J. Hoffmeister died.  Judy Hoffmeister, therefore, is now the only plaintiff in the case.

the Court for decision. Having considered the pleadings, the evidentiary record and arguments of the parties, the Court finds that the relief requested should be granted in part and denied in part in accordance with the following.

## I. Jurisdiction

This Court has jurisdiction over the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(A), (I), (J), (K) & (O).[2]

## II. Pleadings and Procedural Background

### A.    Shelton Builders, Inc. Bankruptcy

Shelton Builders, Inc. ("Shelton Builders")[3] filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code[4] on March 2, 2010, that was subsequently converted to a case under Chapter 7 on June 1, 2010 on the motion of the United States Trustee.  *In re Shelton Builders, Inc.,* No. 10-50468-KMS, (Bankr. S.D. Miss. filed Mar. 2, 2010) (Dkt. Nos. 1, 50, 83). John D. Moore was employed as counsel for the debtor.  *Id.* at Dkt. No. 43.  Doreen M. Early was the president and sole owner of Shelton Builders and she signed the voluntary petition as president of the company.[5] *Id.* at Dkt. Nos. 1, 23.  The Schedules identified a lawsuit filed by the Hoffmeisters in the Chancery Court of Pearl River County, Mississippi for construction defects

---

[2] There are no jurisdiction issues reflected in the pretrial order. (Adv. Dkt. No. 61). Additionally, Early admitted to the Court's jurisdiction in her answer to the adversary complaint. (Adv. Dkt. No. 8, at 4). The Court notes that Early did not participate in the preparation of the pretrial order although the notice setting the pretrial conference and trial dates instructed her to participate. (Adv. Dkt. No. 53). The pretrial order was signed by the Court on May 20, 2013, the first day of the trial. (Adv. Dkt. No. 61).

[3] Shelton Builders, Inc. is a Mississippi corporation with its own federal tax identification number. (*In re Shelton Builders, Inc.,* No. 10-50468-KMS (Bankr. S.D. Miss. filed Mar. 2, 2010) (Dkt. No. 1).

[4] Bankruptcy Code refers to the United States Bankruptcy Code located at Title 11 of the United States Code. References to code sections herein, unless noted otherwise, are references to the Bankruptcy Code.

[5] Early took over operation of the company after the death of her husband in August of 2005. According to Early, the company was in operation for approximately 18 years.

and removal of construction lien. *Id.* at Dkt. No. 23. On October 18, 2010, the Chapter 7 Trustee, Kimberly R. Lentz, filed her Chapter 7 Trustee's Report of No Distribution in the Shelton Builders' bankruptcy. The case was closed on December 1, 2010. *Id.* at Dkt. No. 121.

**B.     Doreen M. Early Bankruptcy**

On June 16, 2010, Doreen M. Early filed her voluntary petition for relief under Chapter 13 of the Bankruptcy Code. (Dkt. No. 1). The case was converted to Chapter 11 on August 26, 2010, by order granting the Debtor's motion to convert. (Dkt. Nos. 14, 18, 33). On November 22, 2010, the case was converted to Chapter 7 on the United States Trustee's motion to convert or dismiss.[6] (Dkt. Nos. 69, 102). Kimberly R. Lentz was appointed as Chapter 7 Trustee.[7]

**C.     Hoffmeisters' Adversary Complaint**

On November 23, 2010, shortly after the conversion of Early's case to Chapter 7, the Hoffmeisters filed their adversary complaint against Doreen M. Early, individually, and Shelton Builders. The complaint asserts that the Hoffmeisters entered into a construction contract with Shelton Builders for construction of a home on Apache Drive, Carriere, Pearl River County, Mississippi for $221,164.00. The construction was not completed in a timely manner and the Hoffmeisters hired another contractor to finish the home. The Hoffmeisters further alleged that while the parties were attempting to negotiate their disputes, Early filed a construction lien on the property for an amount that was more than she could have reasonably believed was owed.

---

[6] Prior to the order converting the case to Chapter 7, an order was entered on November 16, 2010, allowing Debtor's counsel, John D. Moore, to withdraw as counsel. (Dkt. Nos. 83, 94). On January 5, 2011, J. Rod Nixon filed a notice of entry of appearance as counsel for the Debtor. (Dkt. No. 130). Early testified that she had difficulty reaching Nixon which testimony seems consistent with the experience of the Court and counsel for the Hoffmeisters. *See* Order on Show Cause (Dkt. No. 186), Motion to Compel Discovery and for Sanctions (Adv. Dkt. No. 37). An order was entered on June 13, 2012, granting Nixon's request to withdraw as attorney for the Debtor, effective April 26, 2012. (Dkt. Nos. 202, 210). Since that time, Early has represented herself in the bankruptcy without the assistance of counsel.

[7] The Chapter 7 Trustee's Report of No Distribution was filed on February 16, 2011.

3

According to the Hoffmeisters, the lien was filed with intent to cause substantial harm to them. They assert that Shelton Builders is a mere alter ego of Early, or alternatively, that Early's actions on behalf of Shelton Builders were so improper and outrageous as to be ultra vires actions. The Hoffmeisters alleged that the corporate veil should be pierced and that Early should be held personally responsible and liable for the actions of Shelton Builders.

The Hoffmeisters requested that the Court deny discharge, find that the debt alleged to be owed by Early to the Hoffmeisters be declared nondischargeable, enter an award of actual and punitive damages, enter judgment for legal fees and expenses and enter an order to cancel and expunge the construction lien filed against their property.[8]

Early filed her answer asserting eighteen defenses[9] and denying most of the allegations. After a number of discovery extensions the matter was scheduled for trial. Early failed to cooperate in discovery and, as a result, was prohibited from using documents that she brought to the trial but had never produced to Hoffmeister.

### III. The Trial

At Trial, documentary evidence was admitted and testimony received from several witnesses, including: Judy Darby Hoffmeister, the plaintiff; William Lawrence Ducker, an attorney for Hoffmeister who testified as to limited issues; Charles Lee, a licensed inspector and contractor hired by the Hoffmeisters to complete construction of their home after they terminated Shelton Builders; and Doreen Early, the Debtor defendant. The evidence showed that in late

---

[8] Although the complaint was filed against Early and Shelton Builders, it appears to primarily seek relief against Early. No answer was filed on behalf of Shelton Builders and no default judgment has been requested. Furthermore, the Hoffmeisters' state court action against Shelton Builders was listed in the company's Chapter 7 schedules, the Chapter 7 Trustee in the Shelton Builders case filed a report of no distribution and the case has been closed. At trial, plaintiff did not assert any claim against Shelton Builders and instead focused on Early.

[9] The defenses raised included among others, failure to state a claim, no involvement in individual capacity, claims against Shelton Builders are barred, lack of privity of contract and failure to mitigate damages. (Adv. Dkt. No. 8).

4

September of 2008, the Hoffmeisters entered into a contract with Shelton Builders for the construction of their home for $221,164.00.[10] The work was to be completed within 6 months of the October 2008 start date.

Some delays in construction were due to change orders made by the Hoffmeisters, including a change order involving the driveway and a fountain. Another delay was caused by damage from vandalism.[11] The parties were able to agree to more than one extension of time for completion of the contract and the last agreed upon extension expired on or about August 10, 2009, according to Hoffmeister. Early testified that Shelton Builders was prepared to complete the construction. However, the Hoffmeisters terminated Shelton Builders, placed new locks on the doors and hired Charles Lee to finish the job and correct some construction defects.[12]

Early and/or Shelton Builders subsequently filed a construction lien on the Hoffmeisters' home in the amount of $42,244.83 for amounts claimed to be owed under the contract including the final draw.[13] Mrs. Hoffmeister testified that the Hoffmeisters paid approximately $210,856.50 to Shelton Builders for construction, including approximately $7,345.50 paid directly to vendors of Shelton Builders. She also testified that the Hoffmeisters held back retainage of 4 ½ % or $10,307.00. The Hoffmeisters paid Charles Lee approximately $27,981.00

---

[10] (Tr. Ex. 9).

[11] Early testified that new cabinets had to be ordered and installed and an insurance claim processed.

[12] Early stated that she had workers scheduled to complete construction on the final day of the extension but that the locks had already been changed.

[13] Trial Exhibit 2 is a Notice of Property Lien dated September 2, 2009, that indicates the name of the lienor as "Shelton Builders, Inc. / Doreen M. Early." The Notice was signed by "Doreen Early, President/Owner." The construction lien was filed with the Chancery Clerk in Pearl River County, Mississippi, in the amount of $42,244.83 against the property located on Lot 36, Phase II, Round Rock Subdivision at 137 Apache, Carriere, Mississippi. Evidence indicated that the lien was placed on the property after the Hoffmeister's terminated Shelton Builders and changed the locks on the home.

to make repairs and complete the home.[14]  Lee testified that he completed the work on the Hoffmeister's home in approximately 30 days.[15]

Much of the trial testimony included details regarding the construction and specific items that were necessary for the completion or correction of the home.  Some of the items discussed included additional bracing for the roof, repair of a porch leak and a foundation crack, insulation, gutter repairs, door locks, mirrors, as well as other items.  Lee testified that he was able to make the required repairs, with the exception of the garage foundation,[16] and complete the home; and that in his opinion, the house was structurally sound.

Early argued that under the construction contract, the Hoffmeisters were obligated to submit any disputes to mediation and that they failed to comply with the contractual requirement. She also argued that had she been allowed to complete the home she would have been able to do so at a lower cost than Lee, partially because she already had some of the supplies, including paint.[17]  Early further argued that the construction warranty provided by Shelton Builders was voided when the Hoffmeisters hired a different contractor to complete construction.

## IV. Analysis

Hoffmeister requests the Court to:  (1)  pierce the corporate veil of Shelton Builders and hold Early personally liable for actions alleged to have injured Hoffmeister and her property; (2) find that Early's actions violated the Mississippi New Home Warranty Act; (3) deny Early's

---

[14] (Tr. Ex. 12).

[15] Lee came in under his estimate of approximately $30,000.  The Court notes that the cost of the repairs added to what had already been paid by the Hoffmeisters, equated to about an 8% increase over contract price, not surprising in the world of home construction especially considering that there were some significant change orders.

[16] The garage foundation was incorrectly poured at the same level as the house instead of at a lower level, potentially causing problems with rainwater entering the house through the garage.  Hoffmeister testified that no water had actually entered the house in this manner.

[17] Lee testified that he repainted the entire house instead of contacting Early for paint brands and colors.

discharge pursuant to §§ 727(a)(3), (a)(4)(A), (a)(4)(B) and (a)(5); (4) except the debt to Hoffmeister, from discharge pursuant to §§ 523(a)(2) and (a)(6); (5) cancel and expunge the construction lien filed against the Hoffmeister property; and (6) award actual and punitive damages including reasonable legal fees and expenses.

## A.  Section 727

### 1.  Standing to Object

Section 727 places a limitation on who may bring an action challenging a debtor's discharge.  "The trustee, *a creditor*, or the United States trustee may object to the granting of a discharge under subsection (a) of this section."  11 U.S.C. § 727(c)(1) (emphasis added); *Stanley v. Vahlsing (In re Vahlsing)*, 829 F. 2d 565, 567 (5th Cir. 1987) (Congress limited groups allowed to object to discharge).  Therefore, Hoffmeister must be a creditor of the Debtor, Early, to have standing to pursue the causes of action under § 727(a).  *AE Rest. Assocs., LLC v. Giampietro (In re Giampietro)*, 317 B.R. 841, 844 (Bankr. D. Nev. 2004) (under § 727(c), standing to pursue denial of discharge is limited to trustee, creditor or U.S. trustee); *CBS, Inc. v. Folks (In re Folks)*, 211 B.R. 378, 384 (B.A.P. 9th Cir. 1997) (CBS has standing to pursue § 727 complaint only if it is creditor of Folks).  "Creditor" is defined in § 101 of the Bankruptcy Code as an "entity that has a *claim against the debtor* that arose at the time of or before the order for relief concerning the debtor."  11 U.S.C. § 101(10)(A) (emphasis added).[18]  Whether or not Hoffmeister has a claim against the Debtor is essential to a determination of standing to pursue actions under § 727(a).  As defined in the Bankruptcy Code, "claim" means:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

---

[18] Subsections of 11 U.S.C. § 101(10) that further define "claim" are not applicable.

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5).

The construction contract was entered into between the Hoffmeisters and Shelton Builders.[19]  Therefore, any claims or right to payment or remedy, if any, arising out of the contract would be a claim against the defunct Shelton Builders rather than Early, unless Hoffmeister can pierce the corporate veil of Shelton Builders and hold the sole shareholder, Early, personally liable.  *See Hulsing Hotels Tenn. Inc. v. Steffner (In re Steffner)*, 479 B.R. 746, 760 (Bankr. E.D. Tenn. 2012) ("In light of the conclusion that the corporate veil of Sleep Quest may not be pierced to hold the Debtors liable for Sleep Quest's obligation to Hulsing, Hulsing is not a creditor of the Debtors. Consequently, Hulsing does not have standing to object to the Debtors' discharge."); *In re Folks*, 211 B.R. at 384 ("CBS claims its creditor status based upon an alter ego claim against Folks, alleging Folks is liable for BYCA's debts as BYCA's alter ego").

### 2.  *Disregard of Corporate Entity*

Generally, Mississippi law favors maintaining the corporate entity as separate and distinct.  "The cardinal rule of corporate law is that a corporation possesses a legal existence separate and apart from that of its officers and shareholders ..." and the rule is applicable "whether such shareholders are individuals or corporations."  *Lee v. Ability Ins. Co.*, No. 2:12-CV-17-KS-MTP, 2013 WL 2491067, at *2 (S.D. Miss. June 10, 2013); *see Foamex, L.P. v. Superior Prod. Sales, Inc.*, 361 F. Supp. 2d 576, 577 (N.D. Miss. 2005) (under Mississippi law, corporation is treated as separate entity and assets are to be treated as separate and distinct from

---

[19]  (Tr. Ex. 9).  Early signed the contract as president of Shelton Builders, Inc., not as Doreen Early, individually.

debts of individual shareholders).  Disregard of the corporate entity is only allowed "in those extraordinary factual circumstances where doing so is necessary to promote the ends of justice." *In re England Motor Co.*, 426 B.R. 178, 191 (Bankr. N.D. Miss. 2010); *N. Am. Plastics, Inc. v. Inland Shoe Mfg. Co., Inc.*, 592 F. Supp. 875, 877-78 (N.D. Miss. 1984) (veil should not be pierced unless corporation exists to perpetrate fraud or is mere instrumentality, agent, adjunct, or sham designed to subvert ends of justice).

In order to pierce the corporate veil of Shelton Builders, Hoffmeister must establish: "(1) some frustration of expectations regarding the party to whom he looked for performance; (2) the flagrant disregard of corporate formalities by the defendant corporation and its principals; and (3) a demonstration of fraud or other equivalent misfeasance on the part of the corporate shareholder." *Canadian Nat'l Ry. Co. v. Waltman*, 94 So. 3d 1111, 1115 (Miss. 2012); *see also Gray v. Edgewater Landing, Inc.,* 541 So. 2d 1044, 1047 (Miss. 1989).  Hoffmeister must present credible evidence on each of these factors.  *Gray*, 541 So. 2d at 1047; *Rest. Of Hattiesburg LLC v. Hotel & Rest. Supply,* 84 So. 3d 32, 39 (Miss. Ct. App. 2012) (successful veil piercing claim must show each of three *Gray* prongs).

### 3.    *Application of Factors*[20]

The evidence clearly showed that the Hoffmeisters contracted with Shelton Builders and made payments to Shelton Builders.[21]  The fact that Early was the president and owner of the company is not enough, in the absence of other evidence, to show a frustration of the Hoffmeisters' expectation that Shelton Builders was the party from which performance was

---

[20] Although failure to demonstrate credible evidence on just one of the three criteria for piercing the corporate veil would be enough to defeat the attempt, the Court addresses each factor.

[21] *See* Construction Contract (Tr. Ex. 9).  The checks admitted at Trial were made payable to Shelton Builders.  (Tr. Ex. 1).  The complaint to quiet title and remove cloud filed by the Hoffmeisters against Shelton Builders in the Chancery Court of Pearl River County in 2009 alleges that the Hoffmeisters and "Shelton Builders, Inc. by and through its President, Mrs. Doreen Early" entered into a construction contract for the home.  (Tr. Ex. 14, at 3).

expected for construction of the home.  Under Mississippi law, the operation of a business in corporate form does not make the sole owner liable for corporate acts.  *Foamex, L.P. v. Superior Prod. Sales, Inc.*, 361 F. Supp. 2d at 577.  "Indeed, a defendant's sole ownership of a corporation, including the fact that he uses and controls it to promote his ends, is not even a factor for the court to consider in determining whether to hold him personally liable for the corporation's debts."  *Id*.; *see Rosson v. McFarland,* 962 So. 2d 1279, 1286 (Miss. 2007) (evidence failed to satisfy first prong of test where it was clear that McFarland did not contract with Rosson individually for performance or require Rosson to guarantee performance.); *Rest. of Hattiesburg, LLC v. Hotel & Rest. Supply, Inc.*, 84 So. 3d at 40 (frustration with performance is not type of frustration warranting disregard of separate identity).  The Court finds that Hoffmeister has not presented credible evidence that there was a frustration of contractual expectations regarding the party that the Hoffmeisters looked to for performance.

Similarly, the Court finds that the evidence does not demonstrate that there was a flagrant disregard of corporate formalities by Shelton Builders and Early.  Arguments were made at Trial regarding the manner in which Early endorsed checks of Shelton Builders (she endorsed some checks to Shelton Builders in both the name of Shelton Builders and her own name) and that Early operated the business office out of her home.  However, the evidence did not establish flagrant disregard of corporate formalities.  The record reflects, among other factors, that Shelton Builders was a corporation with a separate federal tax identification number, that maintained a separate checking account, had a post office box and entered into contracts in its own name.  *See Rosson v. McFarland,* 962 So. 2d at 1286 (evidence did not establish lack of adherence to corporate formalities where most of invoices for home construction were in business name and

10

where company was licensed by Secretary of State to do business, had separate checking account, separate tax returns and maintained books).

Regarding the third prong of the test, Hoffmeister has not demonstrated fraud or other equivalent misfeasance on the part of Early.   The evidence and testimony showed that the construction of the home was not free from defects, but that Early was attempting to correct at least some of the defects about which the Hoffmeisters had made complaints up to the time that Shelton Builders was terminated.   Hoffmeister's expert, Charles Lee, testified that he finished the construction and made the necessary repairs with the exception of the grade of the garage foundation.   With regard to the garage, Lee testified that the grade could cause rain to leak into the house.   However, there was no testimony that any such leaks had occurred.   Even if construction defects may have resulted from negligence on the part of Shelton Builders, and/or Early, the record does not a reflect fraudulent intent or misfeasance on the part of Early. [22]  *See*

---

[22] Plaintiff's Exhibit 13 contains the Findings of Fact and Conclusions of Law dated January 6, 2010 and Order dated January 13, 2010 issued by the Mississippi State Board of Contractors adopting the recommendations of the Standing Committee on Residential Builders and Remodelers of the Mississippi State Board of Contractors to revoke the license of Doreen Early d/b/a Shelton Builders to engage in residential construction and to assess a civil penalty of $1,000.00.  The action was based on a complaint filed with the Mississippi State Board of Contractors by "Darby and Lloyd Hoffmeister" against Doreen Early d/b/a Shelton Builders in connection with construction of their home.  A hearing was held on the matter at which the parties were present.  Doreen Early d/b/a Shelton Builders waived her right to have counsel present at the hearing.  The board found that the conduct of Doreen Early d/b/a Shelton Builders "constitutes gross negligence or misconduct" in violation of § 73-59-13(1)(c) (pertaining to disciplinary action by state board of contractors).  The committee noted its consideration of five factors in its assessment of whether a civil or monetary penalty should be assessed, including; (1) willfulness of the violation, (2) cost of restoration or abatement, (3) economic benefit to the violator as a result of noncompliance, (4) seriousness of the violation, including harm to the complainant or the public and (5) prior violations.  The committee specified that serious violations were demonstrated, that the respondent received financial gain, but that as a consequences of the construction and failure to properly grade the property and pay vendors, the Hoffmeisters were forced to spend additional time and money to correct or complete construction.  The committee also noted five prior complaints that had been filed against the respondent.

This Court notes that the findings and conclusions of the board do not include a specific finding regarding willfulness, although it was considered in the assessment.  The Court does not find that the conclusion that Doreen Early d/b/a Shelton Builders committed "gross negligence or misconduct," in the absence of some further finding of willfulness or other intent on the part of Early that would equate to a finding of  "fraud or equivalent misfeasance" is a finding that could be construed to satisfy the stringent requirements under Mississippi law to pierce the corporate veil.  Neither do the findings of the Board rise to the level of fraud, intent or willfulness required to establish a claim under §§ 727 and 523.

*Rosson v. McFarland,* 962 So. 2d at 1286 (corporation's negligent performance of contractual duties does not justify disregard of corporate entity); *Rest. Of Hattiesburg, LLC v. Hotel & Rest. Supply, Inc.,* 84 So. 3d at 43 ("Some bad action other than the underlying claim itself … must be shown). In *Rosson v. McFarland,* the Mississippi Supreme Court found that although there were problems in the construction of a home, there was no showing of fraud or equivalent misfeasance:

> Similarly, here we find no evidence that Rosson used McFarland's money for her own personal benefit, or that Rosson was using a shell corporation as a shield from personal liability. "As [an] agent for a disclosed principal … they incur no individual liability, absent fraud or other equivalent conduct." *Gray,* 541 So.2d at 1047.
>
> . . .
>
> As stated above, expert witnesses testified at trial that there were, in fact, problems in the construction of McFarland's home. However, McFarland contracted with Acadian Bay to construct his home properly, and did not demand any individual guarantees from Rosson, nor did she make any. *Turner v. Wilson,* 620 So.2d 545, 548 (Miss.1993), held, "Individual liability of corporate officers or directors may not be predicated merely on their connection to the corporation but must have as their foundation individual wrongdoing." In this case, there is no proof that Rosson acted in any capacity other than as that of officer, agent, or employee of the corporation, nor that Rosson was using a shell corporation as a shield from personal liability pursuant to *Richardson. See Richardson,* 737 So.2d at 1032.

*Rosson v. McFarland*, 962 So. 2d at 1288-89.

Hoffmeister did not establish the three factors required to pierce the corporate veil of Shelton Builders. Although she is a creditor of Shelton Builders, Hoffmeister is not a creditor of Early. As a result, Hoffmeister does not have standing under §727(c) to bring an action objecting to discharge under § 727(a). Therefore, the relief requested under §§ 727(a)(3), (a)(4)(A), (a)(4)(B) and (a)(5) should be and is denied.

**B.**     **Section 523**

Hoffmeister also seeks an exception from discharge pursuant to §§ 523(a)(2)(A) and

(a)(6).  The Fifth Circuit has recognized that an action to except a debt from discharge must be

brought by a creditor:

> The only requirement for standing to bring a nondischargeability action based on
> § 523(a)(6) is that the action must be brought by a creditor. 11 U.S.C. § 523(c). A
> creditor is an "entity that has a claim against the debtor that arose at the time of or
> before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). A
> "claim" is defined as a "right to payment, whether or not such right is reduced to
> judgment. . . ." 11 U.S.C. § 101(5)(A).

*Fezler v. Davis (In re Davis)*, 194 F.3d 570, 574 (5th Cir. 1999).  Since the action must be

brought by a creditor, and Hoffmeister is not a creditor of Early, Hoffmeister does not have

standing to pursue the actions under §§ 523(a)(2) and (a)(6) and relief under those sections

should be and is denied.[23]

**C.**     **New Home Warranty Act[24]**

Hoffmeister seeks relief alleging that "Early's actions and omissions also constitute

numerous violations of the Mississippi New Home Warranty Act."  (Adv. Dkt. No. 1, at 3).  The

Mississippi Code provides that "[i]f a builder violates any of the provisions of this chapter by

failing to perform as required by the warranties provided in this chapter, any affected owner shall

have a cause of action against the builder for actual damages, including attorney fees and court

cost, arising out of the violations."  Miss. Code Ann. § 83-58-17.  "Builder," under the act,

"means any person, corporation, partnership, or other *entity which constructs a home or engages*

---

[23] Even if Hoffmeister had standing to pursue the actions under §§ 523(a)(2) and (a)(6), the requisites for
establishing an exception to discharge under those sections were not supported by the preponderance of the
evidence.  *See Grogan v. Garner*, 498 U.S. 279, 291 (1991) (standard of proof for dischargeability exceptions in 11
U.S.C. § 523(a) is ordinary preponderance of evidence standard).

[24] At one point in the Trial, counsel for Hoffmeister stated that they were no longer pursuing the warranty claim.  He
later reasserted the claim.

13

*another to construct a home. . . ."* Miss. Code Ann. § 83-58-3(a) (emphasis added). It is undisputed that the Hoffmeisters entered into a contract with Shelton Builders, not Early. As a result, the Court finds that Hoffmeister is not entitled to relief from Early under the New Home Warranty Act.[25]

### D.    Construction Lien

Hoffmeister seeks the release of the construction lien placed on her home by Shelton Builders and/or Early. Having reviewed the evidence, the Court finds that Early has not established entitlement to any additional funds owed to her or Shelton Builders by the Hoffmeisters.[26] Accordingly, the construction lien in the records of the Chancery Court of Pearl River County, Mississippi should be and is hereby ordered to be canceled and released.[27]

---

[25] Pursuant Section 83-58-7 of the Home Warranty Act, the owner is required to give the builder notice and a reasonable opportunity to repair defects:

> Before undertaking any repair himself, except repair to minimize loss or damage as provided in Section 83-58-5(2)(d), or instituting any action under Section 83-58-17, the owner shall give the builder written notice within ninety (90) days after knowledge of the defect by registered or certified mail, advising him of the defects and giving the builder a reasonable opportunity to repair the defect. The builder shall give the owner written notice of the requirements of this chapter at the time of closing. If the builder does not provide such notice, the warranties provided in this chapter shall be extended for a period of time equal to the time between the warranty commencement date and date notice was given.

Miss. Code Ann. § 83-58-7. *See DiMa Homes, Inc. v. Stuart,* 873 So. 2d 140, 143-44 (Miss. Ct. App. 2004) (recognizing that act requires owner to give builder opportunity to correct claimed problems). The parties did not address the application or effects of this statute, if any, although the Hoffmeisters did terminate Shelton Builders and retain another contractor.

[26] Miss. Code Ann. § 85-7-131 provides that a house shall be liable for debt contracted and owing for labor done or materials furnished and that a contractor who rendered services and constructed the improvements shall have a lien. "Such lien shall take effect as to purchasers or encumbrancers for a valuable consideration without notice thereof, only from the time of commencing suit to enforce the lien, or from the time of filing the contract under which the lien arose, or notice thereof, in the office of the clerk of the chancery court. . . . " Miss. Code. Ann. § 85-7-131. Miss. Code Ann. § 85-7-133 makes provision for recording a "Notice of Construction Lien." Under § 85-7-141 suit on a construction lien must be commenced within one year of date money claimed became due and payable. *See Regions Bank v. Laurel SSA, LLC,* No. 2:10cv107KS-MTP, 2011 WL 915811 (S.D. Miss. Mar. 16, 2011) (failure to file suit within statutory period results in lien being extinguished).

[27] At the hearing, there was an indication that a portion of the construction lien was for services that were not rendered or performed by Shelton Builders but would have been due under the contract had there been no termination of services. The language of the lien statute does not encompass services not yet performed.

### *V. Conclusion*

The Court concludes that the relief requested should be granted in part and denied in part. For the reasons stated above, Hoffmeister does not have standing to pursue a claim under 11 U.S.C. §§ 727(a) or 523(a) and therefore, relief is denied.  Likewise, Hoffmeister is not entitled to relief against Early under the New Home Warranty Act.

Hoffmeister's request to have the construction lien canceled and released is well taken and should be and is granted.  Therefore, the construction lien recorded in Book 0010, page 177 thru 180, Instrument 200909249 in the Chancery Clerk's Office of Pearl River County, Mississippi is cancelled and released.

A separate final judgment will be entered in accordance with Federal Rule of Bankruptcy Procedure 7058.

Katharine M. Samson
United States Bankruptcy Judge
Dated:  September 30, 2013